UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GINA D., | § | |
| | § | |
| Plaintiff, | § | Case # 1:20-cv-1473-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Gina D. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for child insurance benefits ("CIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 15.

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **GRANTED**, the Commissioner's motion (ECF No. 12) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

Plaintiff protectively filed her CIB application on November 29, 2017, and her SSI application on August 1, 2018, alleging disability beginning November 28, 1997 (the disability onset date). Transcript ("Tr.") 211-13, 222-27. After her claims were denied, Plaintiff requested an administrative hearing. Tr. 98-111. On December 6, 2019, Administrative Law Judge Ellen

Parker Bush (the "ALJ") conducted a video hearing from Lawrence, Massachusetts. Tr. 10, 36-75. Plaintiff appeared and testified in Buffalo, New York, and was represented by Megan Kale, an attorney. Tr. 10. Vanessa J. Ennis, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on March 2, 2020, finding that Plaintiff was not disabled. Tr. 10-20. On September 5, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's March 2, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

The regulations provide for the payment of disabled child's insurance benefits if the claimant was 18 years old or older and has a disability that began before attaining age 22. See 20 CFR 404.350(a)(5). An ALJ must follow a five-step sequential evaluation to determine whether a

claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in her March 2, 2020 decision:

1. Born on November 28, 1997, the claimant had not attained age 22 as of November 28, 1997, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since November 28, 1997, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairment: social anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to understand and remember simple instructions and attend and focus to complete simple tasks. She should have no interaction with the general public. She can have brief superficial interaction with coworkers and supervisors. She should never work in team or tandem. She is able to adapt to minor and infrequent changes to task which are easily explained and demonstrated.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 28, 1997, the alleged date of disability. At time of application, she was 20 years old, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 28, 1997, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. at 10-19.

Accordingly, the ALJ determined that, for the application for child's insurance benefits filed on November 29, 2017, Plaintiff was not disabled as defined in section 223(d) of the Social Security Act prior to November 27, 2019, the date she attained age 22. Tr. 20. The ALJ also determined that, based on the application for supplemental security income protectively filed on August 1, 2018, the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id*.

## <u>ANALYSIS</u>

Plaintiff first argues that the ALJ failed to develop the record with respect to missing records from treating mental health therapist Timothy Pieczonka, LMHC ("Mr. Pieczonka"). *See* ECF No. 11-1 at 12-16. Notably, Mr. Pieczonka provided two letters about Plaintiff's mental functioning but did not provide any notes from Plaintiff's therapy sessions. Tr. 706-10. Plaintiff next argues that the ALJ failed to explain why she did not adopt the psychological capacity assessment of neuropsychologist Michael P. Santa Maria, Ph.D. ("Dr. Santa Maria"), despite finding the opinion highly persuasive as a whole. *See id*. at 16-20.

In response, the Commissioner argues that the ALJ's decision was supported by substantial evidence. *See* ECF No. 13-1 at 18-31. Further, argues the Commissioner, it was Plaintiff's burden to establish greater limitations than those assessed by the ALJ, and she failed to do so. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record and the ALJ's decision, the Court finds that the ALJ's RFC determination was based on an incomplete record, and therefore, was not supported by substantial evidence. As the ALJ noted, other than the two letters submitted by Mr. Pieczonka (*see* Tr. 706-10), there were very few mental health treatment notes in the record. Tr. 17, 18. Nevertheless, the ALJ found that Plaintiff retained the mental capacity to perform simple work. Tr. 16. For the reasons discussed below, the Court finds that the ALJ's failure to adequately develop the record with respect to Plaintiff's cognitive and psychological impairments warrants remand for further administrative proceedings.

Plaintiff alleges she is unable to work due to the combination of her impairments. She stated that she does not cook because she has never tried to use the oven or stove because she is afraid that she might forget to turn it off. Tr. 47. She does, however, use the microwave. *Id*. She testified that she received some extra help in school with reading and occupational therapy. Tr. 49. Plaintiff testified that she was homeschooled by her mother after the third grade. *Id*. She also testified that she completed some type of high school equivalency by taking tests her "mom got [] through California," but she was not sure that she had completed the requirements for a New York State high school diploma. Tr. 51. Plaintiff alleged that she has difficulty counting money and change and doing anything with figures. Tr. 53. She testified that she does exercises to strengthen her legs, but she does not have much upper body strength and drops things (like her phone) frequently. Tr. 57-59. She also stated that she does not leave her house without her mother. Tr. 60. She stated that she has anxiety about going out of the house and will get stomach aches. *Id*.

On March 2, 2018, Plaintiff underwent a consultative intelligence evaluation by Susan Santarpia, Ph.D. ("Dr. Santarpia"). Tr. 373-76. Wechsler Adult Intelligence Scale Fourth Edition ("WAIS-IV") testing revealed a full-scale IQ score of 75, Working Memory Index of 74, and Perceptual Reasoning Index of 75. Tr. 375. Dr. Santarpia stated that the full-scale IQ fell within the borderline range of ability but noted that this score "should be considered with caution" because 3 of the 4 indices fell at or above that score. *Id*. Dr. Santarpia also found that Plaintiff had a delay in social, academics, and work, but had adaptive functioning within normal limits for communication, self-care, community, self-direction, health and safety, home living, and leisure. *Id*. She opined that Plaintiff had mild impairment in interacting appropriately with supervisors, coworkers, and the public. Tr. 375-76. She also opined that Plaintiff's difficulties were caused by "inadequate socialization through home schooling." Tr. 376. Plaintiff did not meet the criteria for a DSM-V diagnosis, but Dr. Santarpia believed she would benefit from therapy to assist with socialization. *Id*.

On August 27, 2018, neuropsychologist Dr. Santa Maria provided a neuropsychological evaluation report based on examinations conducted on June 18, 2018, July 23, 2018, and August 27, 2018. Tr. 490-500. Plaintiff's mother raised a concern about suspected autism spectrum disorder and "vaccine injury" from receiving an MMR vaccine when Plaintiff was less than two years old. Tr. 490. According to Plaintiff's mother, after that vaccination, Plaintiff's contracted a very high fever and Plaintiff never seemed to be the same thereafter.  She developed diminished eye contact and "tended to line up toys in a specific sort of way." *Id*. She did not have any same age friends; she typically did not leave the house without her mother; and her social contacts typically involved conversations with her mother's friends. *Id*. Plaintiff's mother stated that by her early teen years, she became more anxious and less comfortable in a social context. Tr. 492.

Plaintiff spent a lot of time on her tablet, with pets and helping with household chores. *Id*. She had a learner's permit but had not obtained a driver's license because she was extremely anxious during her road tests and made impulsive and improper driving maneuvers. *Id*.

Dr. Santa Maria's impressions were social anxiety disorder (a.k.a. social phobia); specific learning disorder with impairment in mathematics; borderline intellectual functioning, and absence of evidence of an autism spectrum disorder or avoidant personality disorder. Tr. 624. Dr. Santa Maria noted that Plaintiff had a history of cognitive challenges and difficulty learning, and despite completing "an online program for what her mother indicated is a certificate of high school competency, [she] demonstrated broad-based cognitive weaknesses that continued to be evident at present." Tr. 624-25.

Dr. Santa Maria opined that the results of the evaluation suggested that Plaintiff demonstrated "adequate cognitive capacity to handle entry level competitive employment on a part-time or full-time basis in work of a routine and repetitive nature without significant demands on learning and remembering new information, or abstract problem-solving, or reading, writing or mathematics; she appears to demonstrate adequate cognitive capacity to handle work with basic labor demands." Tr. 626. He also noted that Plaintiff should continue outpatient counseling and "might benefit" from medication therapy. *Id*.

On November 6, 2019, treating therapist Mr. Pieczonka wrote a letter stating he had treated Plaintiff on a monthly basis since June 6, 2018. Tr. 706. He stated Plaintiff "presented with anxiety and wanting to obtain employment through a stay-at-home job." *Id*. Mr. Pieczonka noted "perseverations and routines" that Plaintiff struggled to give up, and he questioned whether or not she was "on the spectrum." *Id*. He also noted that his attempts to get Plaintiff to change small points about her routine brought on anxiety. *Id*. He further noted that Plaintiff had never held a job

and he was unsure what "employable skills" she had. *Id*. Mr. Pieczonka opined that Plaintiff "display[ed] a-typical signs of a spectrum disorder," noting as an example, that she would "make good eye contact, but her affect [did] not change and [she] tend[ed] to speak in a mono tone," and she struggled being in public without her mother and did not leave home unless she was with her mother *Id*.

Mr. Pieczonka wrote another letter dated January 16, 2020, essentially restating his November 2019 letter. Tr. 709. However, he added that Plaintiff "perseverat[ed] on the negative outcomes which prevented her from seeking employment." *Id*. He noted that when looking for a job where she could work from home, Plaintiff "found some scams" and eventually stopped looking for employment and applied for disability. *Id*.

Plaintiff argues that the ALJ failed to develop a complete record by failing to obtain treatment records from Mr. Pieczonka prior to reaching her determination that Plaintiff was not disabled. *See* ECF No. 11-1 at 11-16. As noted above, the record contains two letters from Mr. Pieczonka, the first dated November 6, 2019 (Tr. 706), and the second dated January 16, 2020 (Tr. 710), but there are no treatment notes from his monthly counseling sessions with Plaintiff over an approximately twenty-month period.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the

claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 Civ. 5392 (GBD) (KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

In her decision, the ALJ determined that Plaintiff's severe impairment of "social anxiety" was a medically determinable impairment that significantly limits the ability to perform basic work activities. Tr. 13. However, the ALJ found that Plaintiff's suspected autism, avoidance personality disorder, bilateral foot drop/lower extremity weakness, peripheral neuropathy, and suspected endometriosis were not medically determinable impairments. Tr. 14. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14); she retained the capacity to perform a full range of work at all exertional levels with non-exertional limitations (Tr. 16); and therefore, she was not disabled (Tr. 20).

In his brief mention of Plaintiff's treatment with Mr. Pieczonka, the ALJ effectively highlights the missing treatment notes by acknowledging that "[t]here are very few mental health

treatment notes in the claimant's treatment record." Tr. 17. The ALJ went on to acknowledge that "the claimant's counsellor has submitted several letters stating that the claimant has engaged in therapy on a monthly basis beginning in June 2018. However, this provider did not submit any therapy notes, and did not provide an opinion regarding the claimant's functionality." *Id*.

On November 27, 2019, Plaintiff's counsel submitted a letter to the hearing office, advising of her attempts to obtain evidence from several sources, including Mr. Pieczonka. Tr. 325-26. The issue of Plaintiff's treatment with Mr. Pieczonka was also raised at the administrative hearing. At the December 6, 2019 hearing, Plaintiff's counsel explained that, although she had requested all treatment records from June 2018 to present, Mr. Pieczonka only submitted the letter dated November 6, 2019 (Tr. 706), and did not submit any treatment notes. Tr. 38-39. The ALJ pointed out that obtaining therapy notes might be an "issue" because therapists in individual practices are not subject to [] the same rules in terms of medical, production of medical documents as somebody who is in an association of medical practice . . . ." Tr. 39. Thus, the ALJ was on notice that Plaintiff was experiencing difficulties obtaining notes from Mr. Pieczonka's counseling sessions with Plaintiff. Thereafter, the ALJ advised Plaintiff's counsel that she would hold the record open for two weeks after the hearing. Tr. 39.  The second letter from Mr. Pieczonka, dated January 16, 2020, was submitted after the hearing, but Mr. Pieczonka still provided no treatment notes.

The Commissioner argues that because the ALJ based her determination "complete" record, the ALJ was not required to subpoena the missing records. *See* ECF No. 12-1 at 6. The Commissioner also contends that it was Plaintiff's burden to provide medical evidence of her impairments, and the ALJ fulfilled her duty to develop the record by holding the record open for nearly three months after the December 6, 2019 hearing, before issuing a decision on February 26, 2020. *See id*. at 6-10 (citing Tr. 7-25, 34-75). The Commissioner further contends that the ALJ

was not obligated to subpoena records from Mr. Pieczonka, and Plaintiff's counsel never requested that the ALJ or the SSA subpoena Mr. Pieczonka's records and did not ask for the SSA's assistance in procuring the records. *See id*. at 8-9.

First, the Court disagrees that the missing records were not necessary, given that Mr. Pieczonka appears to be Plaintiff's only treating mental health treatment provider. Second, the ALJ should have attempted to secure these records to ensure that the record was complete before rendering her decision. *See Harris v. Berryhill*, 293 F.Supp.3d 365, 369 (W.D.N.Y. 2018) ("The fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them, but did not.") (internal quotations and citations omitted); *Davis v. Colvin*, No. 15-CV-479-MJR, 2016 WL 4708515, at *8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the ALJ's decision, the ALJ should have tried to obtain the records on his own after not hearing from [the plaintiff's] counsel. By not doing so, the ALJ created a gap in the record that necessitates remand."); *see also* Hearings, Appeals and Litigation Law Manual ("HALLEX") at 1–2–5–78(A) ("[w]hen it is reasonably necessary for the full presentation of a case, [the] ALJ may issue a subpoena").

Ultimately, an ALJ is expected to make "every reasonable effort" to fully and fairly develop the record, taking into account the circumstances of the case. *Carr v. Commissioner*, 2017 WL 1957044, at *11 (S.D.N.Y. 2017) (citing *Devora v. Barnhart*, 205 F.Supp.2d 164, 175 (S.D.N.Y. 2002). "Under the particular circumstances presented here—where Plaintiff's impairments are primarily mental in nature, where the sole treating mental health care source refused to provide its treatment records, where the evidence in the incomplete record nonetheless suggested serious difficulties in one or more areas of mental functioning that cried out for

amplification, and where the ALJ declined to exercise his power to subpoena the missing records—the ALJ cannot be said to have made 'every reasonable effort' to complete the record." *Harris*, 293 F. Supp. 3d at 369 (citing 20 C.F.R. § 416.912(d)). Thus, the ALJ issued her determination based on a medical record she knew was incomplete.

In addition, the ALJ relied on the absence of Mr. Pieczonka's treatment notes throughout the decision, for example, finding other opinions persuasive because they were consistent with "the claimant's . . . sparse mental health treatment" notes. Tr. 18. Conclusions about the alleged consistency of medical opinions with missing records are "problematic." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3-4 (W.D.N.Y. Nov. 3, 2016) ("[T]he ALJ gave "great weight" to consultative psychiatric examiner . . . in part because her opinion was 'not inconsistent with the treatment notes of ... Lakeshore[.]' . . . This is problematic because the ALJ clearly did not have all of the relevant Lakeshore treatment notes . . .").

The ALJ's analysis of Plaintiff's credibility similarly relied on the on the absence of Mr. Pieczonka's treatment notes. *Petersen v. Comm'r of Soc. Sec.*, No. 18-CV-6143-FPG, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) (finding the missing records were important and particularly relevant because "the ALJ relied in part on the absence of evidence to conclude that Petersen's neck pain did not cause extreme limitations."); *Matos v. Berryhill*, No. 13 CV 5062 (KMK)(LMS), 2017 WL 2371395, at *20 (S.D.N.Y. May 5, 2017) ("[The ALJ] did not possess a complete medical history to support his [credibility] findings. Without a [fully] developed record, moreover, the Court cannot conclude whether substantial evidence supported the ALJ's credibility finding.") (internal citations and quotations omitted).

In sum, the Court finds that the information contained in the missing records may be important and may influence the ALJ's analysis of other opinion evidence in the record, as well as

13

her analysis of Plaintiff's credibility. On remand, the ALJ is directed to exercise her duty to develop the record to ensure that it is complete, including working to obtain any missing treatment records from Mr. Pieczonka.

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address this issue. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

14